[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 253 
The record in this case is somewhat informal *Page 255 
and does not present the questions arising out of the merits of the controversy as they ought to have been presented, to entitle the parties to be heard upon this appeal. But the cause has been tried upon the merits, and the real questions at issue have been ably presented by the respective counsel, and the court is inclined to overlook the informality, and so dispose of this appeal as to obviate the necessity of further litigation.
The trial of the action was commenced with a jury, and after the evidence had been given by the consent of counsel, the jury were made to respond to two questions of fact and dispensed with for all other purposes, and after the verdict upon those questions the cause was decided by the court without further aid from the jury. It was in substance, then, a trial by the court without a jury, and a decision upon the whole evidence with the aid of the finding of the jury upon two questions of fact.
What other facts were found by the court, or what legal effect, if any, was given to the facts found by the jury, or upon what conclusions of law final judgment passed for the defendant, the record does not disclose.
There is no exception to any ruling of law on the final determination of the action by the court, and the record is imperfect in not presenting in proper form and by distinct exceptions the questions of law to be reviewed here.
The exceptions to the refusals to charge as requested by the plaintiff were waived by the subsequent consent to the submission of particular questions to the jury, and that after verdict on such questions "the cause be decided by the court," reserving only the "right to except to the submission of any particular question that should be deemed immaterial or otherwise improper."
The plaintiff did not ask that any other question be submitted, or that the cause be submitted to the jury in any other form. The consent was inconsistent with the prior requests and exceptions, and they were therefore waived. The verdict was not a general verdict for the defendant with *Page 256 
special findings upon particular facts, as authorized by section 261 of the Code. Neither was it a special verdict, which the jury, had all the issues been submitted to them, might in their discretion have found, the action being for the recovery of specific real property. (Id.)
A special verdict is one by which all the facts of the case are put on the record, and the law is submitted to the judges. (Bouvier's Institutes, 3, 264.) As a special verdict it is defective, as not finding all the material facts in detail, and cannot be aided by facts appearing elsewhere upon the record. (Langley v. Warner, 3 Comst., 327; Hill v. Covell,
1 id., 522.)
It was not proposed by the court or assented to by counsel that there should be a special finding of the facts, leaving solely to the court the application of the law to the facts, but simply a finding upon two specific questions, leaving every other fact as well as the application of the law to the court.
The two questions submitted were material, and there was evidence tending more or less forcibly to establish each. Upon the one side there was evidence that the plaintiff took the title to the premises as security for his advances and subject to his debt, in trust for the defendant; while the plaintiff claimed that his title was absolute, subject only to such rights and equities as might exist in the successors in interest to Daniel D. Carr under a verbal agreement to sell and convey the premises to him for the amount which he, the plaintiff, had advanced. In other words, the plaintiff, ignoring all equities of the defendant, insisted that the relation between himself and Daniel D. Carr, the husband of the defendant, was that of vendor and vendee, and that there had been a default in the payment of the purchase-money, and therefore the action of ejectment was maintainable. But the jury have found adversely to this claim, and have said that the deed to plaintiff was not taken by him on a parol arrangement for a sale of the premises to Daniel D. Carr on payment of the price paid by plaintiff, and taxes and insurance, and this finding is conclusive on this court as against the plaintiff. *Page 257 
Had the jury responded differently to this question, there would have been a serious obstacle to the plaintiff's recovery, in the fact that the vendee of property, in possession under a contract with the assent of the vendor, cannot be ejected until after default in payment; and as no time appears to have been set for the payment, the vendee could only be put in default so as to work a forfeiture by a request to pay. While an action for the money might be brought, and the bringing of the action would be a sufficient demand, it would be at least doubtful whether the vendee could be treated as a trespasser and subjected to an action of ejectment before an actual default by neglecting to pay after a demand.
But passing this, the jury have found, on the only other question submitted to them, that the deed was taken by the plaintiff under a parol arrangement with his brother Daniel D. Carr that the purchase-money, or some portion of it, should be advanced by the plaintiff for the benefit of Daniel D., that the plaintiff should hold the title as security for the repayment to him of the sum advanced and insurance, and that on repayment of such advance the premises should be conveyed to Daniel D., or the defendant, his wife.
In addition to this one fact we must, in the form in which this case is presented, assume that the judge has found every material fact necessary to sustain the judgment, which there was evidence tending to establish and fairly and reasonably justifying a finding that it was proved. (Wright v. Douglass, 3 Seld., 564; Grant v. Morse, 23 N.Y., 323.)
It must be assumed, as proved and found, that Daniel D., Carr had negotiated for and had concluded a treaty for the purchase of the premises from Berry, the original owner, and for his own benefit; that he was able to and did pay a part of the purchase-money; that some or all the residue was advanced by the plaintiff for and at the request of Daniel D., who thereby became a debtor to the plaintiff for the amount thus advanced; and that in pursuance of the agreement made with Daniel D., and in performance of it, Berry conveyed the premises to the plaintiff, thus vesting the legal *Page 258 
title in him in consummation of the equitable title which Daniel D. had under his agreement; and that Daniel D. took immediate possession of the premises, and occupied them as his own, making subsequent payments upon the loan of the plaintiff, and reducing the debt to a small amount, if not extinguishing it altogether; that Daniel D. remained in possession for some nine years and until his death, about 1867; during all which time his rights as the owner, subject only to the lien of the plaintiff for his advances, were acknowledged by the plaintiff, who only claimed as absolute owner, and adverse to Daniel D., after the death of the latter. The property has greatly appreciated in value since the purchase. These facts, which are clearly inferable from the evidence, with the fact found by the jury, make the plaintiff a mortgagee. By the transaction a trust was created in the nature of a mortgage for the security of the plaintiff, with right of redemption in Daniel D. Carr. It is well established that a deed, absolute on its face, can be shown by parol or other extrinsic evidence to have been intended as a mortgage; and that the relation of mortgagor and mortgagee being thus established, all the rights and obligations incident to that relation attach to the parties. (Horn v. Keteltas, 46 N.Y., 605.) The fact once established, either by the terms of the conveyance or by other evidence, that the grant was intended as a mortgage, the rights of the parties are measured by the rules of law applicable to mortgagors and mortgagees; and the conveyance remains but a mortgage until the equity of redemption is foreclosed, and the mortgagee cannot have ejectment against the mortgagor, or those claiming under him, until after foreclosure. (Murray v.Walker, 31 N.Y., 399; Clark v. Henry, 2 Cow., 324.) It is not material that the conveyance should be made by the debtor or by him in whom the equity of redemption will exist. It is sufficient if the debtor and he who claims to occupy the position of mortgagor with the right of redemption, has an interest legal or equitable in the premises, and the grantee of the legal title has and acquired such title by the act and assent of the *Page 259 
debtor, and as a security for his debt. (Stoddard v. Whiting,46 N.Y., 627.) In the case cited the plaintiff sought to redeem the premises from the defendant, who had taken the title, upon paying a balance due upon a contract of purchase held by the assignor of the plaintiff, who had entered under the contract and paid a part of the purchase-money before the arrangement with the defendant, who took the conveyance directly from the original vendor.
But the principle of the case is decisive of this appeal. That the contract was in writing, and the vendee had made partial payment of the purchase-money, and was in possession of the premises, only make the two cases to differ, circumstantially, and affect the degree, rather than the character of the evidence to establish the relationship of mortgagor and mortgagee. The purchase here was by the borrower of the money from the plaintiff, and his rights as purchaser were recognized by the seller; the possession of the actual buyer followed immediately upon the purchase, and he paid a part of the purchase-money at the time, and became a debtor to the plaintiff for the amount advanced by him. The circumstances are as significant and the equities as palpable as in Stoddard v. Whiting; and it needs no extension of the rule there adjudged to declare the conveyance to the plaintiff to have been intended as a mortgage.
The like effect was given to a similar transaction inMcBurney v. Wellman (42 Barb., 390), and S.C. in this courtsub nomine Dodge v. Wellman (reported 43 How. R., 427).
This court did not, in Dodge v. Wellman, declare with much precision the ground upon which the plaintiff was barred of his action. They were very pronounced in the opinion that the attempt to hold the property as upon an absolute grant, divested of all equity of redemption, was too "gross a fraud to be permitted." That was an action of ejectment; and Judge WOODRUFF, in speaking for the court, after stating the facts, says: "Now, as to such an agreement, it is not material whether proof of the facts be regarded as *Page 260 
establishing the testator was mortgagee or vendor; if, upon the facts found, a court of equity, for the prevention of fraud and injustice, will enforce the agreement, the action cannot be sustained." (See, also, Ryan v. Dox, 24 N.Y., 307, andBrown v. Lynch, 1 Paige, 147.)
It was only after a struggle that the doctrine was firmly established, that a grant absolute on its face could be shown by parol to have been intended as a mortgage; but it is established, the courts refusing to permit the statute designed to prevent frauds and perjuries, known as the "statute of frauds," to be used as an instrument of fraud, injustice or oppression.
This doctrine once made a part of the law, and the principle recognized that a statute, benign in its intent and provisions, could not be resorted to as a cover for fraud, it follows that whenever property is transferred, no matter in what form or by what conveyance, as a security for a debt, the transferree takes merely as a mortgagee, and has no other rights or remedies than the law accords to mortgagees.
But the plaintiff claims an absolute title in himself, discharged of all trusts and equities, in favor of Daniel D. Carr or those claiming under him, under the statute which abolishes resulting trusts for the benefit of the party paying the consideration, when the consideration has been paid by one and the grant has been made to another. (1 R.S., 728, § 51.) If there were no other equity than such as grows out of the payment of the consideration for the grant, the claim would be unanswerable. But the statute does not interfere with other equities and rights existing independent of or in connection with the payment of the purchase-price of the property. It is only the common-law trust for the benefit of an individual from whom the consideration for a grant issues, and resulting from the fact of payment of the consideration, and having no other foundation, that the statute abolishes.
It bars no other equity, and precludes no one from asserting title against one who has thus taken a conveyance for a lawful and specific purpose, and attempts to retain the property *Page 261 
in violation of the arrangement and agreement under which he has acquired the formal title, in fraud of the real owner and against equity and good conscience.
This statute can no more be used to perpetrate a fraud or defeat actual equities than can the statute of frauds. They both stand in this respect upon the same footing. It is true that the purchase-money was in substance and effect paid by Daniel D. Carr, and the conveyance was made with his assent to the plaintiff. Had the case stopped here the plaintiff's claim would be valid. But a part of the purchase-money was borrowed of the plaintiff, and the grant was made to him to secure the repayment of that advance, and under an agreement that upon its repayment the property should be conveyed to the rightful owner, and the agreement has been acted upon and partially performed by Daniel D. Carr, and it would be gross fraud to permit the plaintiff now to take shelter behind the statute of uses and trusts and deprive the confiding owner of his just rights.
There is something more than a naked grant to one upon the payment of a consideration by another. The claim of the defendant is not of a resulting trust within the statute, but depends upon other and extrinsic equities. The grant cannot in any view have the benefit of that statute, inasmuch as the law, as we have seen, under the circumstances, gives it the effect of a mortgage only. In truth, the consent of Daniel D. Carr was to a conveyance to the plaintiff in such form only as to secure the payment of the advance; and although he may have mistaken the law and his legal rights, the purpose being lawful, he has not lost his title as against the grantee seeking to make a fraudulent use of the grant. (Lounsbury v. Purdy, 18 N.Y., 515; 1 R.S., 728, § 53.) Giving this grant to the plaintiff the effect intended by the parties, as we must under the established rule, it was but a mortgage, and does not come within the statute abolishing resulting trusts.
There was no mistrial. It was in some respects a departure from the ordinary procedure, in that an isolated fact was *Page 262 
found by the jury, and in all other respects the trial was by the court. But it would have been the same if the same fact had been admitted by the pleadings or by stipulation, or conclusively established in any other way. The plaintiff cannot maintain ejectment, but he can foreclose his mortgage by action if there is anything remaining due for his advances.
The judgment must be affirmed.
All agree.
Judgment affirmed.