## BORK *v.* MARTIN.

*(Superior Court of Buffalo, General Term.   October 30, 1890.)*

**1. TRUSTS—STATUTE OF USES—WHEN APPLICABLE.**

3 Rev. St. N. Y. (7th Ed.) p. 2181, § 51, which provides that where a grant for a "valuable consideration" shall be made to one person, and the "consideration therefor shall be paid by another," no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance, has no application to a mere naked grant, made without valuable consideration, by tenants in common to a third person under an agreement that he should convey the land as directed by the co-tenants, and pay to them all the moneys which should come to his hands.

**2. SAME—PAYMENT OF CONSIDERATION.**

The payment and discharge by one of the co-tenants of an incumbrance on his undivided share in the land, so as to vest a clear title in the grantee, raises an equity in the co-tenant's favor entirely independent of the statute of uses, and is not a payment of consideration within the meaning of the above-cited section.

**8. SAME—PURCHASE MONEY—CONVERSION.**

  The title to purchase money received by the grantee of the co-tenants on the conveyance of the land as directed by them immediately vested in the co-tenants, entirely unaffected by the statute of uses, and the refusal of the grantee to pay it over on demand constitutes a conversion.

Motion for new trial on exceptions.

Action by George Bork against Alexander Martin for conversion of money. The evidence given upon the trial disclosed the following facts: Prior to December, 1879, Joseph Bork and David F. Day were joint owners of a parcel of land situate in the city of Buffalo, upon which the National Savings Bank held a lien, by way of mortgage. A foreclosure of this mortgage was had, and, prior to the sale of the premises under the decree entered therein, Joseph Bork entered into an agreement with Henry W. Box by which said Box was to purchase Bork's interest in said premises in connection with said Day, and hold the same as collateral security for the payment of a debt owing by Bork to Box of about $3,500; that, in pursuance thereof, said Box and Day became purchasers at said sale, and on the 24th day of December, 1879, the sheriff of Erie county executed to said last-named parties a deed of said premises, which the parties procured to be recorded. Subsequently, said Day commenced an action to partition said premises. Thereafter, and in May, 1883, Bork and Day entered into a written agreement, wherein it was agreed by said Day that he would convey his undivided one-half interest in and to said premises to the defendant herein, and said Bork agreed to procure from said Box a conveyance to defendant of the other undivided one-half part of said premises. This agreement was subsequently modified by conveying to Mary Bork a house and lot mentioned therein. In other respects, the said agreement was performed, and a deed of the premises was executed, by Box and wife to defendant September 17, 1883, and by Day and wife October 15, 1883. After the agreement between Bork and Day was executed, Bork entered into an arrangement with the plaintiff whereby plaintiff was to pay to said Box his debt, and become the owner of Bork's interest in the property. This agreement was performed by plaintiff, and he thereby became entitled to all of Bork's interest therein. The partition action, and all accounts between Bork and Day, were settled, and said action discontinued. No consideration for the conveyances was paid by defendant, but prior to their execution a parol agreement was made between said parties, wherein it was agreed that defendant should take the title, and hold the same in trust, for the benefit of plaintiff and said Day, and should, whenever requested, make conveyances of said premises to such person or persons as the parties should designate. The land was cut up into city lots, and so sold. In pursuance of this arrangement, defendant, at plaintiff's request, executed from time to time deeds of conveyance to various persons of said property. Upon none of these sales did defendant receive any part of the purchase money; and mortgages, to secure the purchase price, were taken in the name of plaintiff or Day. The land conveyed to defendant was all conveyed by him as above stated, except five lots. As to these, defendant was requested to execute deeds to the parties entitled, but refused to execute them unless he was paid one-half of the purchase price; and, in order to procure the execution of the deeds, plaintiff caused to be paid the one-half demanded, and thereupon defendant executed the conveyances. At the time defendant refused to convey, he assigned no reason for the refusal, made no claim for compensation, had been put to no expense in the matter, and did not claim to own the land. Day having been paid his share of the last sale, plaintiff caused to be demanded of the defendant the money received by him; and, upon his refusal to pay, this action was brought.

Argued before HATCH and TITUS, JJ.

*David F. Day,* for plaintiff. *Adelbert Moot* and *W. G. Killhoffer,* for defendant.

HATCH, J.　The defendant gave no proof upon the trial, and does not now dispute the fact, that he took title to the land, paying therefor nothing, under an agreement to convey the premises as he should be thereunto requested by the persons interested, paying to such persons all moneys which should come to his hands.　He was therefore under a high moral obligation to deal fairly and in good faith with the plaintiff, who had trusted him, and to pay over all moneys coming from such source.　The position of the defendant now is that, although he has so agreed, and notwithstanding his moral obligation, yet he is under no legal obligation to respond to plaintiff's demand, and may retain the moneys which have thus come to his hands.　In support of this position, the learned counsel for defendant relies upon and invokes section 51 of the statute of uses and trusts, which provides: "Where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section."　The exceptions to this section are without application here.　This section has been the subject of construction many times, and certain rules have been formulated, among which none is more firmly settled than that which provides that this statute, aimed to prevent frauds, cannot be used or construed to perpetrate a fraud.　*Carr* v. *Carr*, 52 N. Y. 251; *Ryan* v. *Dox*, 34 N. Y. 307.　And this result is to be reached, where the fraud appears, notwithstanding the statute.　*Wood* v. *Rabe*, 96 N. Y. 423. We think, however, that the statute is without application to the present case. So far as the conveyance to defendant made by Day is concerned, it is quite clear that no question can arise.　He was the owner at the time, no consideration was paid by him or any one else for the conveyance, it was a mere naked grant, and nothing of value was parted with to secure it.　The same is true with respect to the conveyance by Box.　He was not the owner of the premises.　It is true he held the legal title, but only as collateral security for the payment of his debt.　He recognized that the equitable title was in Bork, and that his title was simply a lien, which it would have been impossible for him to enforce against Bork when his debt was paid.　*Carr* v. *Carr*, 52 N. Y. 251–260.　Bork received nothing, and paid nothing.　Box was paid his debt; but that cannot be treated as the consideration for the conveyance.　It was simply discharging a lien.　Like the paying of a mortgage, as it was, it freed the land from the lien, so that a clear title could rest in the grantee.　But it did nothing more.　It was an equity entirely independent of the statute, and is not such payment of consideration as the statute contemplates.　As was said by Judge ALLEN, in *Carr* v. *Carr*, *supra:* "But the plaintiff claims an absolute title in himself, discharged of all trusts and equities * * * under the statute which abolishes resulting trust for the benefit of the party paying the consideration, when the consideration has been paid by one, and the grant has been made to another. * * * If there was no other equity than such as grows out of the payment of the consideration for the grant, the claim would be unanswerable.　But the statute does not interfere with other equities and rights existing independent of or in connection with the payment of the purchase price of the property.　It is only the common-law trust, for the benefit of an individual from whom the consideration for a grant issues, and resulting from the fact of payment of the consideration, and having no other foundation, that the statute abolishes." In that case, the action was ejectment, brought by the person holding a deed, absolute in form, which he had taken under a parol arrangement that he was to advance a portion of the purchase price, and take the title as security for its repayment.　Defendant therein had entered into possession, paid all or nearly all the debt, and the court held that ejectment could not be maintained; that the deed was simply a mortgage.　No consideration having been paid for this conveyance,

it is not within the terms of the statute. *Robbins* v. *Robbins*, 89 N. Y. 251. There defendant had purchased property, paying the consideration therefor, and procured the deed to be made to one Fay, under an arrangement that Fay should convey as directed. Thereafter, defendant directed a conveyance to be made to plaintiff under a like arrangement. Fay conveyed as directed. Subsequently the property was sold, and certain mortgages taken in the name of plaintiff, which were retained by defendant. The action was to compel the delivery of one of the mortgages to plaintiff, under a claim that, by virtue of the statute, plaintiff took absolute title to the land, freed of all equities, and, in consequence, was entitled to its proceeds. Judge DANFORTH, speaking for the court, says: "In the next place, the plaintiff is not entitled to have the statute (section 51) strained in his favor; and, taken literally, it does not cover his case. The grant to him was from Fay, and for that no valuable consideration was paid. Fay conveyed because, in common honesty, and in fulfillment of his trust, he was bound to convey. The plaintiff's claim is *stricti juris.*" This doctrine seems to exactly fit this case. As no consideration was paid for either grant, the deed is not affected by the statute.

It is, however, claimed that if this be the equitable doctrine it has no application here, as the present action is one at law for conversion. The trust created by the agreement has been executed, so far as the execution of the deeds is concerned. When defendant had executed them he had no interest whatever in the land, either colorable or actual. The only remaining act he is called upon to perform is to pay over the money received on the purchase. As to that, he does not now hold land, but personal property, the title to which immediately vested in plaintiff when defendant received it. As to this, the statute of uses and trusts has no concern. And when plaintiff demanded the money, it was the duty of defendant to pay it over; and when he refused, his refusal constituted, in law, a conversion of the money. I think the action appropriate to the facts proved. *Robbins* v. *Robbins*, 89 N. Y. 258. I am aware that this case says "nor is it necessary to inquire whether if he had received the consideration of the deed in money it could have been taken from him;" but it distinctly holds that the mortgage in that case, taken upon the sale, became personal property, to which the statute had no application, and that the title thereto became at once vested in the *cestui que trust.* If this be so, I see no reason why money received under similar circumstances should not be subject to the same rules.

It is also claimed that the court erred in admitting parol testimony to prove the trust. This claim is answered in *Foote* v. *Bryant*, 47 N. Y. 547, where CHURCH, C. J., says: "The transactions out of which a trust of this character arises may be proved by parol, but the trust itself must rest upon the acts or situation of the parties as proved, and not merely upon their declarations. The statute embraces only trusts which are created or declared by the parties." It follows from these views that the exceptions should be overruled, the motion denied, and judgment ordered for plaintiff upon the verdict.